United States District Court
For the Northern District of California

1

2

3

4

5          **NOT FOR PUBLICATION**

6       IN THE UNITED STATES DISTRICT COURT

7

8       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  TROY YUNKER,                              No. 11-CV-03113 JSW

10          Plaintiff,                       **ORDER GRANTING IN PART
                                             AND DENYING IN PART
11    v.                                     PANDORA MEDIA, INC.'S
                                             MOTION TO DISMISS**
12  PANDORA MEDIA, INC.,
                                             **(Docket No. 54)**
13          Defendant.
                                      /
14

15                     **INTRODUCTION**

16          Now before the Court for consideration is motion to dismiss filed by Defendant Pandora

17  Media, Inc. ("Pandora").  The Court has considered the parties' papers, relevant legal authority,

18  the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES IN PART,

19  Pandora's motion, and GRANTS Yunker leave to amend.

20                     **BACKGROUND[1]**

21          Pandora has developed an "App" for use on mobile devices, which allows users to

22  access, stream, and download digital music files.  (Docket No. 50, First Amended Class Action

23  Complaint ("FAC") ¶¶ 13-14.)  When a user downloads the Pandora App and register with

24  Pandora, Pandora gathers personally identifiable information ("PII") about the user, including

25  their age, gender, location and a universally unique device identifier ("UUID").  (*Id.* ¶ 15.)

26  When the Pandora App runs on a device that uses the Android operating system, the Pandora

27  App is integrated with advertising libraries such as AdMob, AdMarvel, comScore

28

_____

[1]       The facts set forth herein are accepted as true solely for purposes of
evaluating the motions to dismiss.

(SecureStudies), Google.Ads, and Medialets. These advertising libraries "lurk in the background while Pandora users navigate the App, collecting scores of [PII] which are later packaged and sold by the advertising libraries." (*Id.* ¶¶ 20-21; *see also id.* ¶¶ 22-23.)

Pandora's Privacy Policy provides, in part, that it may:

> use and share non-personally identifiable information, such as general demographic or location information, or information about the computer or device from which you access [the Pandora App]. Additionally, we may de-identify personally identifiable information and share it in a de-identified or aggregated form with third parties, advertisers and/or business partners in order to analyze [Pandora] usage, improve the Pandora Services and your listener experience, or for other similar purposes. The use and disclosure of such information is not subject to any restrictions under the Privacy Policy.

(*Id.* ¶ 17 (citing http://www.pandora.com/privacy).)[2]

Yunker contends that he and other users consented to provide Pandora with PII based on the representations in the Privacy Policy that it would de-identify their PII and anonymize that data, when in fact it did not. Yunker also alleges that Pandora exceeded the scope of that consent when it permitted advertising libraries access to users' PII. (*Id.* ¶¶ 25-27.) "Pandora users' PII has substantial value to Pandora." (*Id.* ¶ 30.) There are now "active markets through which people and entities busy and sell this type of PII." One such study has shown that consumers value the restriction of improper access to their data at between $11.33 and $16.58 per website and value the prohibition on secondary use at between $7.98 and $11.68 per website. (*Id.* ¶¶ 31-32.)

Yunker is a resident of Illinois, who owned an Android mobile device and downloaded and used the Pandora App. (*Id.* ¶ 7.) When he registered for the Pandora App, Yunker provided certain PII to Pandora. (*Id.* ¶¶ 34-35.) Yunker considers his PII to be his private property and considers it to have an economic value. Yunker did not consent to the distribution of that PII to third parties. (*Id.* ¶¶ 36-38; *see also id.* ¶¶ 31-32.) Yunker also contends that "certain code components were installed on [his] Android mobile device, which consumed portions of the 'cache' and/or gigabytes of memory on" his device. Yunker paid money for the

---

[2]     Pandora attached a copy of its Privacy Policy, effective as of November 5, 2011, to the declaration of Craig Sterry in support of its motion to dismiss.

1   exclusive use of that memory, and "Android charges its own consumers a premium to purchase

2   extra memory space..." (*Id.* ¶¶ 39-43.)

3          Based on these and other allegations, which the Court shall address as necessary,

4   Yunker asserts claims for: (1) violations of Title I of the Electronic Communications Privacy

5   Act ("ECPA"), 18 U.S.C. sections 2510, *et seq.* (the "Wiretap Act Claim"); (2) violations of

6   Title II of the ECPA, 18 U.S.C. sections 2701, *et seq.* (the "Stored Communications Act

7   Claim"); (3) violations of the Computer Fraud and Abuse Act (the "CFFA Claim"); (4)

8   violations of California Business and Profession Code section 17200, *et seq.*, (the "UCL

9   Claim"); (5) violations of the Consumer Legal Remedies Act, California Civil Code sections

10  1750, *et seq.* (the "CLRA Claim"); (6) breach of contract; (7) public disclosure of private facts;

11  (8) intrusion; (9) violations of Article I, Section I of the California Constitution (the "Right to

12  Privacy Claim"); (10) trespass to personal property; and (11) conversion.[3]

13                                              **ANALYSIS**

14  **A.    Applicable Legal Standards.**

15         Pandora moves to dismiss on the basis that the Yunker lacks standing under Article III

16  of the United States Constitution.  The Court evaluates the motion to dismiss for lack of

17  standing pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See White v. Lee*, 227 F.3d

18  1214, 1242 (9th Cir. 2000).  A motion to dismiss for lack of subject matter jurisdiction under

19  Rule 12(b)(1) may be "facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

20  (9th Cir. 2004).  In this case, Pandora raises a facial challenge to Yunker's standing, and,

21  therefore, the Court "must accept as true all material allegations in the complaint, and must

22  construe the complaint in" Yunker's favor.  *Chandler v. State Farm Mut. Auto Ins. Co.*, 598

23  F.3d 1115, 1121-22 (9th Cir. 2010); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

24  (1992) ("At the pleading stage, general factual allegations of injury resulting from the

25  defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general

26

27          [3]      Although Yunker is a resident of Illinois, the parties have assumed that
28  California law applies to the claims for breach of contract, public disclosure of private facts,
    intrusion, trespass to personal property, and conversion.  The Court, therefore, has applied
    California law to resolve the motion.

United States District Court
For the Northern District of California

1   allegations embrace those specific facts that are necessary to support the claim.") (internal cite

2   and quotations omitted).          Pandora also moves to dismiss each of the claims pursuant to

3   Rule 12(b)(6).  A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to

4   state a claim upon which relief can be granted.  The Court construes the allegations in the

5   complaint in the light most favorable to the non-moving party and all material allegations in the

6   complaint are taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

7   However, even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to

8   provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

9   and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp.*

10  *v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

11          Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

12  must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at

13  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

14  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

15  *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility

16  standard is not akin to a probability requirement, but it asks for more than a sheer possibility

17  that a defendant has acted unlawfully.... When a complaint pleads facts that are merely

18  consistent with a defendant's liability, it stops short of the line between possibility and

19  plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation

20  marks omitted).  If the allegations are insufficient to state a claim, a court should grant leave to

21  amend, unless amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291,

22  296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242,

23  246-47 (9th Cir. 1990).

24  **B.      Article III Standing.**

25          Pandora moves to dismiss Yunker's third through eleventh claims for relief on the basis

26  that Yunker lacks standing.[4]  In order to satisfy the Constitution's standing requirements, a

27

28          [4]      Pandora does not dispute that Yunker has standing to pursue the claims for
    violations of the Wiretap Act and the Stored Communication Act.

4

United States District Court

For the Northern District of California

plaintiff must show: (1) he or she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61; *see also Clapper v. Amnesty International*, – S.Ct. –, 2013 WL 673353, at *7 ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.") (internal quotations, citations and brackets omitted, emphasis in original).  A plaintiff also may establish the requisite injury "by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"  *Edwards v. First Am. Financial Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (quoting *Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008)).

"The jurisdictional question of standing precedes, and does not require, analysis of the merits."  *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008).  Thus, "[a] plaintiff may satisfy the injury-in-fact requirements to have standing under Article III, and ... may be able to 'bring a civil action without suffering dismissal for want to standing to sue,' without being able to assert a cause of action successfully."  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 n.5 (N.D. Cal. 2011) (quoting *Doe v. Chao*, 540 U.S. 614, 624-25 (2004)).

Yunker argues that he has alleged facts sufficient to show standing, because he alleges: (1) Pandora's conduct diminished the value of his PII; (2) Pandora's conduct decreased the memory space on his mobile device; (3) Pandora's disclosure of his PII put him at risk of future harm; and (4) Pandora invaded his constitutional right to privacy when it disseminated his PII to third parties.  (*See generally* FAC ¶¶ 34-43.)  The Court addresses each argument in turn.

### 1.    Dimunition in Value of PII.

Although the Ninth Circuit has yet to address the issue, district courts have been reluctant to find standing based *solely* on a theory that the value of a plaintiff's PII has been diminished.  *See, e.g., In re Google, Inc. Privacy Litig.*, 2012 WL 6378343, at *4-6 (N.D. Cal. Dec. 28, 2012); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1054 (2012) ("Plaintiffs

1    have alleged additional theories of harm beyond their theoretical allegations that personal

2    information has independent economic value."); *Low v. Linkedin Corp.,* 2011 WL 5509848, at

3    *4-5 (N.D. Cal. Nov. 11, 2011) ("*Low I*"); *In re iPhone Application Litig.*, 2011 WL 4403963,

4    at *4 (N.D. Cal. Sept. 20, 2011) ("*iPhone I*"); *LaCourt v. Specific Media, Inc.*, 2011 WL

5    2473399, at * 4 (C.D. Cal. Apr. 28, 2011).

6            Yunker attempts to bolster the argument that his PII has value by alleging that he "paid"

7    for the Pandora App by providing Pandora with his PII.  (*See, e.g.,* FAC ¶¶ 33, 110.)  In support

8    of this argument, Yunker relies on *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855 (N.D. Cal.

9    2011).  In the *Claridge* case, the court denied a motion to dismiss for lack of standing, noting

10   the "paucity of controlling authority regarding the legal sufficiency of plaintiff's damages

11   theory."  *Id.* at 861.  The court also noted that "the context in which plaintiff's theory arises -

12   i.e., the unauthorized disclosure of personal information via the Internet - is itself relatively

13   new, and therefore more likely to raise issues of law not yet settled in the courts."  *Id.*  "For that

14   reason, and although [it had] doubts about [the] plaintiff's ultimate ability to prove his damages

15   theory," the court found the "allegations of harm sufficient at this stage to allege a generalized

16   injury in fact."  *Id.*

17           However, unlike Yunker, the plaintiff in that case also relied on the fact that there had

18   been a breach to the servers on which the defendant held his personal information.  *Id.* at 858-

19   59.  The plaintiff in *Claridge* also alleged that the defendant asked for such information as

20   usernames and passwords of third party social networking sites and that such information was at

21   risk of disclosure.  *Id.*  Yunker does not allege that he provided passwords or other sensitive

22   financial information to Pandora as "payment" for its service.  (*See, e.g.,* FAC ¶¶ 15, 35-36.)

23   The Court finds *Claridge* to be distinguishable on its facts.

24           Although Yunker alleges that studies show that consumers ascribe specific dollar values

25   to their PII, he does not specifically tie those allegations to him.  Yunker does not allege he that

26   attempted to sell his PII, that he would do so in the future, or that he was foreclosed from

27   entering into a value for value transaction relating to his PII, as a result of Pandora's conduct.

28   Yunker also does not allege that had he known how Pandora would use his PII, he would not

United States District Court

For the Northern District of California

1    have downloaded or used the App.  *See, e.g., Low I*, 2011 WL 5509848, at *5 (finding that

2    plaintiff lacked standing where he failed to allege facts showing how he was foreclosed from

3    capitalizing on the value of his personal data or how he was 'deprived of the economic value of

4    [his] personal information simply because [his] unspecified personal information was

5    purportedly collected by a third party'") (quoting *LaCourt*, 2011 WL 1661532 at *5); *LaCourt*,

6    2011 WL 1661532, at *4-5 (court noted it "probably would decline to say that it was

7    categorically impossible for [p]laintiffs to allege some property interest" relating to value of

8    personal information, but finding plaintiffs lacked standing because they failed to "identify a

9    single individual who was foreclosed from entering into a 'value-for-value exchange'" as a

10   result of defendant's practices).  Even if the Court assumes that PII is a form of personal

11   property, the court concludes Yunker has not alleged facts sufficient to show injury-in-fact

12   based on the purported dimunition in value of his PII.

13        **2.    Decrease in Memory Space.**

14        Yunker also argues he has shown injury in fact based on a decrease in the memory space

15   on his Andorid mobile device.  Specifically, Yunker alleges that he paid for the exclusive use of

16   the memory on his Android mobile device and alleges that "the presence and surreptitious

17   activities of the third-party advertising libraries in the Pandora App include certain code

18   components that ... consumed portions of the 'cache' and/or gigabytes of memory" available to

19   him.  (FAC ¶ 39; *see also id.* ¶¶ 41-42.)  Courts have found that "[d]imunition in the

20   *performance* of an electronic device may constitute an injury in fact, but a plaintiff must 'allege

21   facts showing that this is true.'"  *Goodman v. HTC America, Inc.*, 2012 WL 2412070, at *6

22   (W.D. Wash. June 26, 2012) (quoting *LaCourt*, 2011 WL 1661532, at *5) (emphasis added).

23   For example, in *iPhone II*, the court concluded that allegations regarding diminished storage,

24   battery life, and bandwidth were sufficient to allege actual injury.  *See* 844 F. Supp. 2d at 1054-

25   56.  The plaintiffs in *iPhone II* alleged that they paid for the "exclusive use" of the memory on

26   their phones, as Yunker does here.  However, unlike Yunker, they also included specific

27   allegations about the apparently large amount of memory the defendants consumed.  (*See, e.g.,*

28   *In re iPhone Application Litig.*, No. 11-MD-2250-LHK, Docket No. 25, First Amended

**United States District Court**

For the Northern District of California

1   Consolidated Complaint ("*iPhone II* Compl."), ¶¶ 63.b, 72.d, 198.)  Yunker also does not allege

2   that he noticed any performance problems or that he had problems with his phone because of

3   the diminished memory space.  This case also differs from both *iPhone II* and *Goodman,*

4   because the defendants in those cases manufactured the mobile devices in question and, thus,

5   the plaintiffs could satisfy the requirement that their alleged injury was fairly traceable to the

6   defendant's conduct.  Yunker has not named a manufacturer as a defendant, he did not pay for

7   the Pandora App, and he does not allege that he would not have downloaded the Pandora App

8   had he known it would consume the memory space at issue.[5]

9          **3.     Future Harm.**

10          Yunker also attempts to rely on a theory that he is subject to an increased threat of future

11   harm, based on the fact that Pandora does not anonymize his PII.  In support of this argument,

12   Yunker relies on *Krottner v. Starbucks, Corp.*, 628 F.3d 1139 (9th Cir. 2010).  In that case,

13   however, the plaintiff alleged that a laptop which contained social security numbers, as well as

14   names and addresses had been stolen.  The court found plaintiff had alleged facts sufficient to

15   show standing based on an increased risk of identity theft.  *Id.* at 1143.  The court expressly

16   noted, however, that "if no laptop had been stolen, and Plaintiffs had sued based on the risk that

17   it would be stolen at some point in the future, we would find the threat far less credible."  *Id.*

18          The Court finds that the facts of this case are distinguishable from the facts in *Krottner*.

19   Yunker does not allege that he disclosed sensitive financial information, such as a social

20   security number or a credit card number, to Pandora.  Further, he has not alleged that anyone

21   has breached Pandora's servers.  Although Yunker alleges that Pandora did not anonymize his

22   PII when it provided that information to the advertising libraries, the Court finds that at best

23   Yunker alleges facts that show it might be possible that, in the future, he could be the victim of

24

25

26          [5]     Yunker alleges that  "Android" charges its consumers a premium to purchase
      extra memory space on the Android mobile devices. (¶ 40) "Android" is not a defendant, and
27   Yunker has not alleged that he purchased extra memory space.  It also is not clear that
      Yunker attempts to rely on an overpayment theory, but even if he did, he does not include
28   facts sufficient to show that any alleged injury based on overpayment for an Android mobile
      device is fairly traceable to Pandora's conduct.

1    identity theft.  However, the possibility of future harm is insufficient to establish standing.  *See*

2    *Clapper*, – S.Ct. –, 2013 WL 673353, at *7.

3        **4.      Invasion of Constitutional Rights.**

4        Yunker also relies on a theory of injury based on alleged violations of his constitutional

5    privacy rights.  "[T]he actual or threatened injury required by [Article III] may exist solely by

6    virtue of statutes creating legal rights, the invasion of which creates standing...."  *Warth v.*

7    *Seldin*, 422 U.S. 490, 500 (1975).  With respect to the alleged violations of the constitutional

8    right to privacy, Pandora does not dispute that the constitutional provision "can be understood

9    as granting persons in [Yunker's position] a right to judicial relief."  *Id.*  Thus, the Court

10   concludes that Yunker has standing to pursue that claim, and it denies, in part, Pandora's

11   motion to dismiss on this basis.

12       For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART,

13   Pandora's motion to dismiss for lack of standing.  Because the Court concludes that Yunker

14   may be able to cure the deficiencies identified above, the Court GRANTS Yunker leave to

15   amend.

16   **D.    The Court Dismisses the Wiretap Act Claim, with Leave to Amend.**

17       In his first claim for relief, Yunker alleges that Pandora violated the Wiretap Act. The

18   ECPA amended the Wiretap Act to extend protections to electronic communications and

19   created a private right of action to "any person whose wire, oral, or electronic communication is

20   intercepted, disclosed, or intentionally used in violation of this chapter...."  18 U.S.C. § 2520(a);

21   *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002).  Yunker alleges

22   that Pandora intentionally violated the Wiretap Act by: (1) intentionally divulging contents of a

23   communication to third parties, in violation of Section 2511(3)(A); (2) intentionally intercepting

24   Yunker's electronic communications, in violation of Section 2511(1)(a); and (3) intentionally

25   using Yunker's electronic communications to profit from its unauthorized collection and sale of

26   its data.

27       **1.      "Contents" of a Communication.**

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1   Pandora moves to dismiss the Wiretap Act claim on the basis that Yunker fails to allege

2   facts showing it intercepted the "contents" of any electronic communication.  The Wiretap Act

3   defines "contents" as "any information concerning the substance, purport, or meaning of that

4   communication."  18 U.S.C. § 2510(8).  Pandora argues that information such as the UUID, and

5   a person's zip code, gender, or birthday cannot comprise the "substance, purport, or meaning"

6   of a communication.  Based on the allegations *in this case*, the Court does not find that

7   argument persuasive.

8   In *United States v. Reed*, the Ninth Circuit concluded that "call data content (CDC),"

9   which included information about a call's origination, and the length and time of the call, did

10  not meet the statutory definition of contents of a communication and, thus, was not subject to

11  the Wiretap Act's sealing requirements.  575 F.3d 900, 914-917 (9th Cir. 2009).  The court

12  reasoned that CDC is "data that is incidental to the use of a communication device and contains

13  no 'content' or information that the parties *intended to communicate.*"  575 F.3d at 916

14  (emphasis added); *cf. United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (finding that

15  email and Internet users "have no expectation of privacy in the to/from addresses of their

16  messages or the IP addresses of the websites they visit because they should know that this

17  information is provided to and used by Internet service providers for the specific purpose of

18  directing the routing of information" and concluding that information did not meet the

19  definition of "contents," because it did not reveal information about the underlying

20  communication).

21  In *iPhone II*, the court, following *Reed*, dismissed the plaintiffs' Wiretap Act claim, in

22  part, on the basis that the geolocation data collected by Apple was "generated automatically,

23  rather than *through the intent of the user*, and therefore [did] not constitute 'content' susceptible

24  to interception."  844 F. Supp. 2d at 1062 (emphasis added); *see also id.* ("[T]he Court

25  concludes that under the current version of the statute, personally identifiable information that is

26  *automatically generated by the communication* but that does not comprise the substance,

27  purport, or meaning of that communication is not covered by the Wiretap Act.") (emphasis

28  added).  Yunker alleges that he intended to provide his PII to Pandora when he registered for its

1   service.  Thus, the facts in this case are distinguishable from the facts in *iPhone II,* because

2   Yunker's Wiretap Act Claim is not based on a communication that includes data that has been

3   generated automatically.  Rather, on the facts of this case, Yunker alleges that the PII *is* the

4   substance of the electronic communication.

5              **2.        Interception.**

6         Pandora also moves to dismiss the Wiretap Act claim on the basis that Yunker fails to

7   allege it "intercepted" an electronic communication.  "Intercept" means "the aural or other

8   acquisition of the contents of any wire, electronic, or oral communication through the use of any

9   electronic, mechanical or other device."  18 U.S.C. § 2510(4).  In order to establish that a

10  defendant "intercepted" an electronic communication, a plaintiff must allege facts that show the

11  electronic communication has been "acquired during transmission, not while it is in electronic

12  storage."  *Konop*, 302 F.3d at 878-79.  As discussed above, Yunker alleges that he provided his

13  PII to Pandora and alleges that Pandora subsequently "intercepted" that communication from

14  him.

15        In *Crowley v. Cybersource*, the plaintiff alleged that Amazon intercepted an e-mail

16  message and then disclosed its contents to a co-defendant, CyberSource for the purpose of

17  invading the plaintiff's privacy.  *Crowley*, 166 F. Supp. 2d 1263, 1268 (N.D. Cal. 2001).  The

18  court found that when the plaintiff transmitted his information to Amazon via e-mail, "Amazon

19  did not 'intercept' the communication within the meaning of the Wiretap Act, because Amazon

20  did not acquire it using a device other than the drive or server on which the e-mail was

21  received."  *Id.* at 1269; *see also id.* (noting that plaintiff's interpretation of intercept would lead

22  to an "untenable" result, because it would "effectively remove from the definition of intercept

23  the requirement that the acquisition be through a 'device.'" *Id.*; *see also Marsh v. Zazoom*

24  *Solutions, LLC*, 2012 WL 952226, at *17 (N.D. Cal. Mar. 20, 2012) (dismissing Wiretap Act

25  claim where plaintiff did not allege that any defendant "acquired the information by capturing

26  the transmission of information that was otherwise in the process of being communicated to

27  another party," or that any defendant used a "device" to intercept the communication).

28

United States District Court

For the Northern District of California

11

The Court finds the reasoning in *Crowley* and *Marsh* persuasive, and it concludes that Yunker fails to allege facts showing that Pandora "intercepted" an electronic communication, because he does not allege that Pandora intercepted any communication that was that he was communication to another party or that Pandora used a "device" to intercept the communication.

**3.      Pandora as Party to Communications.**

Pandora also moves to dismiss on the basis that it is a party to the communications. Yunker alleges that Pandora provides an electronic communication service to the public and intentionally divulged his PII to third parties, in violation of Section 2511(3)(A).  (FAC ¶¶ 56-57, 60.)  This provision of the Wiretap Act provides that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (*other than one made to such person or entity, or an agent thereof*)...."  18 U.S.C. § 2511(3)(A) (emphasis added).

Assuming for the sake of argument that Pandora provides an electronic communication service, by its terms Section 2510(3)(a) permits a person or entity to divulge a communication when the communication was to that person or entity.  Because Yunker expressly alleges that he communicated his PII to Pandora, the Court concludes that Yunker fails to state a claim for a violation of Section 2510(3)(a).  *See, e.g., In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 713 (finding allegations insufficient to state a claim under Section 2510(3)(a), where communication at issue was sent from user (the plaintiffs) to the defendant).

Accordingly, for the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Pandora's motion to dismiss the Wiretap Act claim.  Although the Court is skeptical that Yunker could amend this claim, the Court cannot say it would be futile do so, and it GRANTS Yunker leave to amend.

//

//

**E.      The Court Dismisses the Stored Communications Act Claim, with Leave to Amend.**

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Yunker's second claim for relief asserts that Pandora violated 18 U.S.C. sections

2    2702(a)(1) and 2702(a)(2) of the Stored Communications Act.  Pandora raises a number of

3    arguments in support of its motion to dismiss.

4    **1.      Section 2702(a)(1).**

5    Section 2702(a)(1) provides that, subject to certain exceptions, "a person or entity

6    providing an electronic communication service to the public shall not knowingly divulge to any

7    person or entity the contents of a communication while in electronic storage by that service[.]"

8    Pandora moves to dismiss, in part, on the basis that Yunker fails to allege it divulged the

9    contents of an electronic communication "while in electronic storage."  Because the Court finds

10   this argument dispositive, it does not reach Pandora's alternative arguments.

11   Yunker does not address this argument in his opposition brief, implicitly conceding that

12   it has merit.  "Electronic storage" is defined as "any temporary, intermediate storage of a wire

13   or electronic communication incidental to the electronic transmission thereof; and any storage

14   of such communication by an electronic communication service for purposes of back up

15   protection of such communication."  18 U.S.C. § 2510(17)(A)-(B); *see also* 18 U.S.C. §

16   2711(1) (incorporating by reference the definitions set forth in Section 2510).  Yunker alleges

17   that the UUID on his phone is a "supercookie," which is not capable of being altered or deleted.

18   (FAC ¶ 13.)  A number of district courts have concluded that "cookies" do not fall with the

19   SCA's definition of electronic storage, because they are not intended to be temporary.  *See, e.g.,*

20   *iPhone II*, 844 F. Supp. 2d at 1058-59 (citing cases and dismissing Stored Communications Act

21   claim for alleged violation of Section 2701 for failure to plead facts showing information was in

22   "electronic storage").

23   The Court finds the reasoning of the *iPhone II* case and the cases cited therein

24   persuasive.  Therefore, to the extent Yunker's Stored Communications Act Claim is premised

25   on the fact that Pandora divulged his UUID, the Court concludes the allegations are insufficient

26   to state a claim.  The Court also concludes that, apart from conclusory allegations that parrot the

27   text of the Stored Communications Act, Yunker fails to include any facts to show that his PII

28

13

1   was in "temporary or immediate storage," once he sent it to Pandora or that Pandora stored that

2   information "for purposes of backup protection...." *See* 18 U.S.C. § 2510(17)(A)-(B).[6]

3        **2.       Section 2702(a)(2).**

4        Section 2702(a)(2) provides that, subject to certain exceptions, "a person or entity

5   providing a remote computing service to the public shall not knowingly divulge to any person

6   or entity the contents of any communication which is carried or maintained on that service...."

7   Pandora moves to dismiss this claim, in part, on the basis that Yunker fails to allege facts

8   showing that it is a "remote computing service."  The Court agrees.

9        A "'remote computing service' means the provision to the public of computer storage or

10  processing services by means of an electronic communications system."  18 U.S.C. § 2711(2).

11  The legislative history of the SCA elaborates on this definition, and explains that

12          remote computer service companies have developed to provide
             sophisticated and convenient computing services to subscribers and
13          customers from remote facilities.  Today businesses of all sizes—hospitals,
             banks and many others—use remote computing services for computer
14          processing.  This processing can be done with the customer or subscriber
             using the facilities of the remote computing service in essentially a time-
15          sharing arrangement, or it can be accomplished by the service provider on
             the basis of information supplied by the subscriber or customer.

16

17  *See* S.Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3564-65; *see also Quon v.*

18  *Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 900 (9th Cir. 2008), *rev'd on other grounds*

19  *by City of Ontario v. Quon*, – U.S. –, 130 S.Ct. 2619 (2010).

20

21

22      [6]      Although neither party addressed this issue, there is another potential bar to
     Yunker's claim under the Stored Communications Act, to the extent it rests on allegations
23   that Pandora provides electronic communications services.  Yunker alleges that he provided
     his PII to Pandora to register for the Pandora App.  Thus, Pandora was an intended recipient
24   of that communication.  If the Court accepts as true that Pandora provides electronic
     communications services, on Yunker's theory of the case, Yunker may have pleaded himself
25   out the Stored Communications Act claim, at least in part, because "[a] provider described in
     subsection (a) may divulge the contents of a communication — with the lawful consent of
26   the originator *or* an addressee *or* intended recipient of such communication...."  18 U.S.C. §
     2702(b)(3) (emphasis added); *see, e.g., In re Facebook Privacy Litigation*, 791 F. Supp. 2d at
27   714 & n.6; *In re American Airlines Privacy Litig.*, 370 F. Supp. 2d 552, 560-61 (N.D. Tex.
     2005) (dismissing Stored Communications Act claim where plaintiff alleged defendant was
28   intended recipient of personal information, even where disclosure may have breached
     defendant's privacy policy).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Yunker's allegations that Pandora provides a remote computing service are entirely

2 conclusory and do no more than recite the statutory definition of that term.  (*See* FAC ¶ 67.)

3 Thus, the Court is not required to accept them as true.  *Twombly*, 550 U.S. at 555.  Further, none

4 of the facts suggest that Pandora offers "computer storage" services to the public.  *See, e.g., In*

5 *re Jet Blue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 310 (E.D.N.Y. 2005) (dismissing

6 Stored Communications Act claim where, although plaintiffs alleged that defendant airline

7 operated a website and computer servers, there were no facts to suggest that it provided

8 computer processing services or computer storage to the public).

9    Yunker relies on *Viacom International, Inc. v. You Tube, Inc.*, 253 F.R.D. 256 (S.D.N.Y.

10 2008).  In that case, however, it was clear that users of YouTube.com could upload videos to the

11 website, which then stored those videos.  *See id.*  In contrast, Yunker does not allege that users

12 of Pandora's service can upload and store music on Pandora.  Similarly, Yunker does not

13 include any allegations from which the Court could reasonably infer that Pandora provides the

14 type of computer processing services contemplated by the legislative history of the Stored

15 Communications Act.  *Quon*, 529 F.3d at 901-02; *In re Jet Blue*, 379 F. Supp. 2d 310.

16    Accordingly, for the foregoing reasons, the Court GRANTS Pandora's motion to

17 dismiss the Stored Communications Act Claim.  Although the Court is skeptical that Yunker

18 could amend this claim, the Court cannot say it would be futile do so, and it GRANTS Yunker

19 leave to amend this claim.

20 **F.    The Court Dismisses the CFAA Claim, with Leave to Amend.**

21    Yunker's third claim for relief asserts that Pandora violated the CFAA.  "The CFAA

22 prohibits a number of different computer crimes, the majority of which involve accessing

23 computers without authorization or in excess of authorization, and then taking specified

24 forbidden actions, ranging from obtaining information to damaging a computer or computer

25 data."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009); *see also* 18 U.S.C.

26 § 1030(a)(1)-(7).  Pandora moves to dismiss the CFAA claim on the basis that, *inter alia*,

27

28

United States District Court

For the Northern District of California

1     Yunker's allegations are insufficient to show the requisite damage or loss. The Court agrees

2     and, for that reason, it does not reach Pandora's alternative arguments.[7]

3        In order to bring a civil action under the CFAA, Yunker must show a "loss to 1 or more

4     persons during any 1-year period ... aggregating at least $5,000 in value." 18 U.S.C. § 1030(g).

5     The CFAA defines "damage" as "any impairment to the integrity or availability of data, a

6     program, a system, or information." 18 U.S.C. § 1030(e)(8). The CFAA defines "loss" as "any

7     reasonable cost to any victim, including the cost of responding to an offense, conducting a

8     damage assessment, and restoring the data, program, system, or information to its condition

9     prior to the offense, and any revenue lost, cost incurred, or other consequential damages

10     incurred because of interruption of service." *Id.* § 1030(e)(11).

11        Yunker relies on the same allegations that purport to show standing to support the

12     "damage" and "loss" elements of his CFAA Claim. However, for the same reasons the Court

13     found Yunker's allegations of economic injury insufficient to show standing, it finds the

14     allegations insufficient to allege damage and loss. By way of example only, even if the Court

15     found Yunker's allegations of diminished memory storage were sufficient to allege standing,

16     there are insufficient facts in the FAC from which the Court could reasonably infer those

17     allegations of damage - even if aggregated - would reach the $5,000 threshold required by the

18     CFAA. *See, e.g., iPhone II*, 844 F. Supp. 2d at 1067; *AtPac, Inc. v. Aptitude Solutions, Inc.*,

19     730 F. Supp. 2d 1174, 1184-85 (E.D. Cal. 2010) (citing cases); *cf. Del Vecchio v. Amazon.com*,

20     2012 WL 1997697, at *3-*6 (W.D. Wash. June 1, 2012) (dismissing CFAA claim where

21     plaintiffs did not allege facts showing devaluation of their personal information or that they

22     discerned any difference in performance of computer when they visited defendant's website).

23        Accordingly, the Court GRANTS Pandora's motion to dismiss the CFAA Claim on this

24     basis. Because the Court cannot conclude that it would be an act of futility, it GRANTS Yunker

25     leave to amend this claim.

26     //

27

28         [7]     Yunker does not specify which provisions of the CFAA Pandora allegedly violated. If Yunker chooses to amend this claim, he should clearly identify the provisions of the CFAA that are at issue.

16

**E.      The Court Dismisses the UCL Claim, with Leave to Amend.**

Yunker's fourth claim for relief asserts that Pandora violated the UCL.  Pandora moves to dismiss on the basis that Yunker lacks statutory standing to pursue the claim and fails to state a claim.  Under the UCL, "there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent."  *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 837 (2006); *see also Albillo v. Intermodal Container Services, Inc*., 114 Cal. App. 4th 190, 206 (2003) (to state a UCL claim, a "plaintiff must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)").  In addition, the UCL "requires that a plaintiff have 'lost money or property' to have standing to sue.  The plain import of this is that a plaintiff now must demonstrate some form of economic injury."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011); *see also* Cal. Bus. & Prof. Code § 17204.

**1.      Yunker Fails to Allege He Has Standing Under the UCL.**

In *Kwikset*, the California Supreme Court noted that there are many ways a plaintiff may establish economic injury to show standing under the UCL, including "surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she otherwise would have."  *Id.* Yunker alleges that his PII constitutes "personal property," which has been diminished in value. Yunker also alleges that he paid for the exclusive use of the memory space on his mobile device, and Pandora used some of that space without his knowledge or consent.  For the same reasons the Court finds that Yunker fails to allege facts to show injury-in-fact for purposes of Article III standing based on these allegations, the Court finds Yunker has not alleged facts that are sufficient to show he lost money or property as a result of Pandora's conduct.  *See Claridge*, 785 F. Supp. 2d at 863 (concluding plaintiff failed to allege statutory standing based on theory that PII constituted currency, where plaintiff failed to show his PII did not cease to belong to him or pass beyond his control).

**2.      Yunker Fails to State a Claim Under the Unlawful Prong.**

Yunker's UCL claim is premised, in part, on allegations that Pandora has engaged in unlawful conduct.  (FAC ¶¶ 86-97.)  To state a claim based on the unlawful prong, Yunker must

United States District Court
For the Northern District of California

17

United States District Court

For the Northern District of California

1    allege that Pandora's practices are "forbidden by law, be it civil, criminal, federal, state, or

2    municipal, statutory, regulatory, or court made." *Saunders v. Superior Court*, 27 Cal. App. 4th

3    832, 838-39 (1994). Because the Court finds Yunker fails to allege facts showing a violation of

4    the Wiretap Act, Stored Communications Act, the CFAA, or the CLRA, any of his state law

5    claims, or the constitutional right to privacy, Yunker has not stated a claim under the "unlawful

6    prong" of the UCL. *See Berryman v. Merit Property Mgmt., Inc.*, 152 Cal. App 4th 1544, 1554

7    (2007) ("a violation of another law is a predicate for stating a cause of action" under unlawful

8    prong).

9               **3.      Yunker May State a Claim Under the Unfair Prong.**

10   Pandora also argues that Yunker fails to state a claim under the unfair prong. Unfair

11   simply means any practice whose harm to the victim outweighs any benefits. *Olsen v. Breeze,*

12   *Inc.*, 48 Cal. App. 4th 608, 618 (1996). "The court must weigh the utility of the defendant's

13   conduct against the gravity of the harm to the alleged victim." *Gafcon, Inc. v. Ponsor &*

14   *Assocs.*, 98 Cal. App. 4th 1388, 1425 n.15 (2002). In *iPhone II*, the court refused to conclude,

15   as a matter of law, that allegations regarding collection and dissemination of personal

16   information were insufficient to state a claim under the unfair prong. *iPhone II*, 844 F. Supp. 2d

17   at 1073. The allegations in this case are substantially similar to the allegations in *iPhone II*.

18   The Court finds *iPhone II* persuasive and concludes that, if Yunker is able to sufficiently allege

19   standing, he has alleged facts that would be sufficient to state a claim under the unfair prong.

20   Accordingly, the Court GRANTS, IN PART, AND DENIES, IN PART, Pandora's

21   motion to dismiss the UCL claim. Because the Court cannot conclude that it would be an act of

22   futility, it GRANTS Yunker leave to amend this claim.

23   **F.      The Court Dismisses the CLRA Claim, with Leave to Amend.**

24   Yunker's fifth claim for relief asserts that Pandora violated the CLRA. Pandora moves

25   to dismiss the CLRA claim on the basis that Yunker lacks statutory standing to pursue this

26   claim and fails to state a claim.

27   //

28   //

United States District Court

For the Northern District of California

### 1.    Yunker Fails to Allege Facts to Show Standing.

In order to establish statutory standing to pursue the CLRA claim Yunker must establish he suffered an actual injury as a result of Pandora's alleged conduct. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-60 (9th Cir. 2009); Cal. Civ. Code § 1780. For the same reasons the Court finds Yunker fails to allege he has standing to pursue a UCL claim, it finds he fails to allege he has standing to pursue the CLRA claim.

### 2.    Yunker Fails to State a Claim Under the CLRA.

Pandora also moves to dismiss on the basis that Yunker has not alleged facts that show he is a "consumer." Under the CLRA, consumer "means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *See* Cal. Civ. Code § 1761(d). In *Claridge*, *supra*, the plaintiff alleged, as Yunker does here, that he purchased the defendant's services with his PII, *i.e.,* that the PII was currency. The *Claridge* court disagreed. It reasoned that "this argument - and the more generalized notion that the phrase 'purchase' or 'lease' contemplates any less than tangible form of payment - finds no support under the specific statutory language of the CLRA, nor has plaintiff relied on any legal authority suggesting as much." *Claridge*, 785 F. Supp. 2d at 864. The Court finds that reasoning persuasive, and it concludes Yunker fails to allege facts that show he is a "consumer," as that term is defined in the CLRA.

Pandora also moves to dismiss on the basis that its App does not qualify as a "good," as that term is used in the CLRA. "'Goods' means tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not they are severable from the real property." Cal. Civ. Code § 1761(a). A number of district courts have concluded that software does not fall within this statutory definition. *See, e.g., Goodman*, 2012 WL 2412070, at *12; *Ferrington v. McAfee*, 2010 WL 3910169, at *18-19 (N.D. Cal. Oct. 5, 2010); *cf.* Cal. Comm. Code § 9102(a)(4) (defining general intangibles to include software for purposes of secured transactions). Assuming for the sake of argument that Yunker's novel

United States District Court

For the Northern District of California

1  theory would be sufficient to allege that he is a consumer, the Court finds the reasoning of these

2  cases persuasive, and it concludes that Yunker fails to allege that the Pandora App is a good.

3       Yunker also argues that Pandora provides a "service."  However, he expressly alleges

4  that "Apps are software that consumers download and install on their phones."  (FAC ¶ 11.)

5  Further, although Yunker alleges that Pandora allows users to stream, access and download

6  music and argues that these allegations show Pandora provides "services," Yunker has not

7  complained about this aspect of the Pandora App.

8       Accordingly, the Court GRANTS, Pandora's motion to dismiss the CLRA Claim.

9  Because the Court cannot say it would be an act of futility, it GRANTS Yunker leave to amend

10  this claim.

11  **G.    The Court Dismisses the Breach of Contract Claim, with Leave to Amend.**

12       In his sixth claim for relief, Yunker asserts that Pandora breached the terms of its

13  Privacy Policy.  In order to state a claim for breach of contract, Yunker must allege the

14  existence of a contract, that he performed under the contract, Pandora breached the contract, and

15  that he suffered appreciable and actual damage as a result of Pandora's breach.  *See, e.g.,*

16  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (citing *Patent*

17  *Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967)); *Ruiz v. Gap,*

18  *Inc.*, 622 F. Supp. 2d 908, 917-918 (N.D. Cal. 2008), *aff'd* 380 Fed. Appx. 689 (9th Cir. 2010);

19  *First Commercial Mort. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).

20       Pandora moves to dismiss this claim, in part, on the basis that Yunker fails to allege he

21  suffered appreciable and actual damage as a result of any alleged breach.  In *Claridge*, the court

22  found that the plaintiff's allegations regarding the security breach, which exposed the plaintiff's

23  PII, were sufficient to show "the breach of his PII has caused him to lose some ascertainable but

24  unidentified 'value' and/or property right inherent in the PII."  785 F. Supp. 2d at 865; *see also*

25  *id.* at 861.  In contrast, other courts within this District have found damages based on

26  allegations of collection of personal information are insufficient to state a claim for breach of

27  contract.  *See Low v. LinkedIn Corp.*, – F. Supp. 2d –, 2012 WL 2873847, at *12-13 (N.D. Cal.

28  July 12, 2012) (citing cases) ("*Low II*"); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 717.

United States District Court

For the Northern District of California

1    The Court finds the allegations in this case are more similar to the facts alleged in *Low* and *In re*

2    *Facebook* than the facts in *Claridge*, and it concludes that Yunker fails allege actual and

3    appreciable damage based on the collection and dissemination of his PII.

4            Yunker argues in opposition brief that he has alleged damages based on the fact that he

5    paid for the exclusive use of the memory on his Android device.  However, Yunker neither

6    includes those allegations of harm in his claim for breach of contract nor connects that harm to

7    an alleged breach of Pandora's Privacy Policy.  (*See generally* FAC ¶¶ 104-111.)

8            Accordingly, the Court GRANTS Pandora's motion to dismiss the breach of contract

9    claim.  Because the Court cannot say it would be an act of futility, it GRANTS Yunker leave to

10   amend this claim.

11   **H.      The Court Dismisses the Right to Privacy Claim, with Leave to Amend.**

12           In his ninth claim for relief, Yunker alleges that Pandora violated his constitutional right

13   to privacy.  In order to state a Right to Privacy claim, Yunker must allege facts showing: (1) a

14   specific, legally protected privacy interest; (2) a reasonable expectation of privacy; and (3)

15   conduct that is "sufficiently serious in [its] nature, scope, and actual or potential impact to

16   constitute an egregious breach of the social norms underlying the privacy right."  *Hill v. Nat'l*

17   *Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994); *see also iPhone II*, 844 F. Supp. 2d at

18   1063.  This case raises the issue of "informational privacy," *i.e.* the alleged "dissemination or

19   misuse of sensitive and confidential information...."  *Id.* at 35.

20           In *iPhone II*, the plaintiffs alleged that the defendants collected and disclosed their PII

21   and geolocation data to third parties.  The court found that these allegations were not sufficient

22   to satisfy the third element of a right to privacy claim.  *iPhone II*, 844 F. Supp. 2d at 1063.  The

23   *iPhone II* court relied, in part, on *Fogelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011).

24   In the *Fogelstrom* case, the plaintiff alleged that the defendant "routinely ask[ed] its customers

25   for their ZIP codes during credit card transactions so that it could obtain their home addresses

26   for the purpose of mailing marketing materials to them," and misrepresented why it asked for

27   this information.  *Fogelstrom*, 195 Cal. App. 4th at 989.  The *Fogelstrom* court found that

28   "obtaining plaintiff's address without his knowledge or permission, and using it to mail him

United States District Court

For the Northern District of California

1    coupons and other advertisements ... is not an egregious breach of social norms, but routine

2    commercial behavior." *Id.* at 992.

3            In contrast, in *Goodman*, *supra*, the plaintiffs alleged HTC America and three weather

4    applications installed code on certain HTC phones, which "transform[ed] the phones into

5    surreptitious tracking devices," by transmitting fine location data that enabled the defendants to

6    "track their movements, including where they live, work, dine and shop."  2012 WL 2412070,

7    at *1.  According to plaintiffs, the defendants then used this information "to build profiles about

8    them, and sell this information to third parties." *Id.*; *see also id.*, 2012 WL 2412070, at *14

9    (noting that plaintiffs alleged defendants "obtained sensitive personal information ... including,

10   *inter alia*, a continually updated log of precisely where they live, work, park, dine, pick up

11   children from school, worship, vote, and assemble, and what time they are ordinarily at these

12   locations").  The *Goodman* court concluded that these allegations, in conjunction with

13   allegations that the plaintiffs had alleged they did not expect the defendants to compile profiles

14   about them or share those profiles with third parties, were sufficient to state a claim for

15   violations of California's constitutional right to privacy.  *Id.*, 2012 WL 2412070, at *14-15.

16           Yunker does not allege that Pandora used geolocation data to track his movements.

17   Rather, he alleges that Pandora obtained his PII and provided that information to advertising

18   libraries for marketing purposes, in violation of the terms of Pandora's Privacy Policy.  The

19   Court finds that the allegations in this case are more similar to the allegations in *iPhone II* and

20   *Fogelstrom* than to the allegations in *Goodman*, and are not sufficient to allege that Pandora's

21   conduct constitutes an egregious breach of social norms.

22           Accordingly, the Court GRANTS Pandora's motion to dismiss the Right to Privacy

23   Claim.  Although it is skeptical that Yunker will be able to amend this claim, the Court cannot

24   say it would be an act of futility, and it GRANTS Yunker leave to amend.

25   **I.     The Court Dismisses the Claims for Public Disclosure of Private Facts and
           Intrusion, with Leave to Amend.**

26

27           In his seventh and eighth claims for relief, Yunker claims that Pandora publicly

28   disclosed private facts and intruded upon his privacy.  The elements of a claim for public

United States District Court

For the Northern District of California

disclosure of private facts are: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Group W Productions, Inc.*, 18 Cal. 4th 200, 214 (1998).

"[A]n action for intrusion has two elements: (1) intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person." *Id.* at 231. The first element requires a plaintiff to show "the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff," and "the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id.* at 232. In order to determine offensiveness, a court or fact-finder considers "all of the circumstances of the intrusion, including its degree and setting and the intruder's motives and objectives." *Id.* at 236 (internal quotations and citation omitted).

Yunker alleges that he provided Pandora with his PII, which it then disclosed to third parties. (FAC ¶¶ 15, 35.) Yunker does not allege that Pandora tracked his movements or obtained and then either disclosed or left unencrypted any type of sensitive financial information, medical information, or passwords. For the reasons discussed above in connection with the Right to Privacy claim, the Court finds that Yunker has not alleged facts sufficient show that Pandora's conduct is either offensive or objectionable to a reasonable person or highly offensive.

Accordingly, the Court GRANTS Pandora's motion to dismiss these claims. Because the Court cannot say it would be an act of futility, it GRANTS Yunker leave to amend these claims.

**J.      The Court Dismisses the Claim for Trespass to Chattels, with Leave to Amend.**

In his tenth claim for relief, Yunker asserts Pandora trespassed on his personal property. In order to state a claim for trespass to chattels, Yunker must allege facts showing "an intentional interference with the possession of personal property [that] proximately caused injury." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51 (2003). When a plaintiff alleges trespass to a computer system, or a similar device, the plaintiff must show that the purported trespass: (1) either caused physical damage to personal property; (2) impaired the condition,

quality or value of personal property; or (3) deprived the plaintiff of the use of personal property for a substantial time.  *Id.* at 1356 (citing Rest. 2d Torts, § 218, pars. (b), (c)).

In the *Intel* case, the court found that the defendant was entitled to summary judgment on a trespass to chattels claim, because the plaintiff failed to produce any evidence that the defendant's conduct had "any appreciable effect on the operation of its computer system" or that defendant's conduct would be "replicated by others if found not to constitute a trespass." *Id.* at 1356; *see also id.* at 1353-56 (reviewing cases and noting that a "defendant's use of [a] plaintiff's computer system was held sufficient to support an action for trespass when it actually did, or threatened to, interfere with the functioning of the system, as by significantly reducing its available memory and processing power").

Yunker alleges Pandora installed unwanted code that consumes portions of the memory on his mobile device.  (FAC ¶¶ 39, 132-135.)  In the *iPhone II* case, the court dismissed the plaintiffs' claims for trespass to chattels based on allegations that were substantially similar to the allegations here.  Indeed, unlike Yunker, the plaintiffs in *iPhone II* alleged that "the Tracking Defendants' repeated actions during App executions utilized approximately two to three seconds of battery capacity with each action due to the power requirements of CPU processing, file input and output actions, and Internet connectivity."  (*In re iPhone Application Litig.*, No. 11-MD-2250-LHK, Docket No. 25, First Amended Consolidated Complaint, ¶ 200; *compare id.* ¶¶ 197-202, 296-309 *with* FAC ¶¶ 39, 132-135.)  The court, however, concluded that "[w]hile these allegations conceivably constitute a harm, they do not plausibly establish a significant reduction in service with the intended functioning of the system, which is necessary to establish a cause of action for trespass."  *iPhone II*, 844 F. Supp. 2d at 1069.  The Court cannot distinguish the facts of this case from the facts in *iPhone II*, and it concludes that Yunker has not alleged sufficient facts to state a claim for trespass to chattels.

Accordingly, the Court GRANTS Pandora's motion to dismiss the claim for trespass to chattels.  Because the Court cannot say it would be an act of futility, it GRANTS Yunker leave to amend this claim.

//

United States District Court

For the Northern District of California

1    //

2    **K.    The Court Dismisses the Conversion Claim, with Leave to Amend.**

3          In his eleventh claim for relief, Yunker alleges that Pandora converted his personal

4    property.  In order to state a claim for conversion, Yunker must allege facts showing

5    "'ownership or right to possession of property, wrongful disposition of the property right and

6    damages.'"  *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (quoting *G.S. Rasmussen &*

7    *Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992)).  In order to

8    determine whether a property right exists, courts apply a three part test.  "First, there must be an

9    interest capable of precise definition; second, it must be capable of exclusive possession or

10   control; and third, the putative owner must have established a legitimate claim to exclusivity."

11   *G.S. Rasmussen*, 958 F.2d at 903.

12         Yunker's conversion claim rests solely on the theory that Pandora has converted his PII,

13   which includes information such as his age, gender, location and the UUID on his mobile

14   device.  (FAC ¶¶ 15, 137.)  As noted, courts have reluctant to find that PII is a form of personal

15   property.  *See, e.g., In re Google, Inc. Privacy Litig.*, 2012 WL 6378343, at *4-6; *iPhone II*, 844

16   F. Supp. 2d at 1054; *Low I*, 2011 WL 5509848, at *4-5.  Further, as the *iPhone II* court noted, in

17   the specific context of a conversion claim, "it is difficult to see how this broad category of

18   information is capable of exclusive possession or control."  *iPhone II*, 844 F. Supp. 2d at 1075.

19   The Court finds that reasoning persuasive.  Moreover, even if PII can be considered a form of

20   personal property, for the same reasons the Court finds Yunker fails to allege standing based on

21   the dimunition in value of his PII, the Court finds that the facts are insufficient to show he was

22   damaged by the alleged conversion.

23         Accordingly, the Court GRANTS Pandora's motion to dismiss the claim for conversion.

24   Because the Court cannot say it would be an act of futility, it GRANTS Yunker leave to amend

25   this claim.

26                                    **CONCLUSION**

27         For the foregoing reasons, the Court grants, in part, and denies, in part, Pandora's

28   motion to dismiss and grants Yunker leave to amend.  If Yunker chooses to amend, he shall file

                                           25

his amended complaint by April 25, 2013.  Although the Court stated that it would set a date for

a hearing on the motion for class certification in this order (*see In re Google Android Consumer

Privacy Litigation,* 11-MD-2264-JSW, Docket No. 9), in light of the uncertain state of the

pleadings, the Court will not set a hearing on such a motion until this matter is at issue.

It is FURTHER ORDERED that the parties shall appear for a case management

conference on May 31, 2013 at 1:30 p.m.  The parties shall submit a joint case management

statement by no later than May 24, 2013.

**IT IS SO ORDERED.**

Dated: March 26, 2013



_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE