United States District Court
For the Northern District of California

1

2

3

4

5                                  **NOT FOR PUBLICATION**

6                        IN THE UNITED STATES DISTRICT COURT

7

8                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  TROY YUNKER, EDGAR DURAN,              No. 11-CV-03113 JSW
   ROBERT HODSON, and RALPH
10 PETROSINO, et al.,                     **ORDER GRANTING IN PART
                                          AND DENYING IN PART
11              Plaintiffs,               PANDORA MEDIA, INC.'S
                                          MOTION TO DISMISS SECOND
12    v.                                  AMENDED COMPLAINT AND
                                          SETTING CASE MANAGEMENT
13 PANDORA MEDIA, INC.,                   CONFERENCE**

14              Defendant.                **(Docket No. 83)**
                                    /
15

16        Now before the Court for consideration is motion to dismiss filed by Defendant Pandora

17 Media, Inc. ("Pandora").  The Court has considered the parties' papers, relevant legal authority,

18 the record in this case, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, the

19 motion to dismiss.[1]

20                                  **BACKGROUND**

21        "This action challenges Pandora's practice of collecting the personal information of its

22 users and then disseminating it to third-party advertising libraries."  (Docket No. 79, Second

23 Amended Class Action Complaint ("SACC") ¶ 1.)[2]  Plaintiffs, citizens of Illinois, Troy Yunker

24

25        [1]     **Plaintiffs have not complied with Northern District Local Rule 3-4(c)(2),
26 which requires that footnotes be in 12 point font.  The Court HEREBY places *all*
   parties on notice that if any party fails to comply with this rule in the future, the Court
27 shall strike the offending brief without further notice to that party.**

28        [2]     A more detailed account of the facts underlying this dispute is set forth in the
   Court's Order granting in part and denying in part Pandora's motion to dismiss the First
   Amended Class Action Complaint.  *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at
   *12 (N.D. Cal. Mar. 26, 2013).

United States District Court

For the Northern District of California

1  ("Mr. Yunker"), Edgar Duran ("Mr. Duran"), Robert Hodson ("Mr. Hodson"), and Ralph

2  Petrosino ("Mr. Petrosino") (collectively "Plaintiffs") downloaded and used the Pandora App

3  on their mobile devices.  (*Id.* ¶¶ 7-10.)  Mr. Petrosino, Mr. Duran, and Mr. Hodson also paid

4  recurring monthly fees for Pandora's premium service, Pandora One (hereinafter the "Pandora

5  One Plaintiffs").  (*Id.* ¶¶ 8-10; *see also id.* ¶ 21 (Pandora One subscribers pay yearly fee of

6  $36.00 or monthly fee of $3.99).)  Plaintiffs allege that when they downloaded and registered to

7  use the Pandora App, Pandora collected "certain personally identifiable information ('PII') ...

8  including" age, gender, location and the universally unique device identifier ("UUID") for a

9  user's mobile device.  (*Id.* ¶ 22.)

10        Pandora's Privacy Policy provides, in part, that it may:

11        use and share non-personally identifiable information, such as general
          demographic or location information, or information about the computer or
12        device from which you access [the Pandora App].  Additionally, we may
          de-identify personally identifiable information and share it in a de-
13        identified or aggregated form with third parties, advertisers and/or business
          partners in order to analyze [Pandora] usage, improve the Pandora Services
14        and your listener experience, or for other similar purposes.  The use and
          disclosure of such information is not subject to any restrictions under the
15        Privacy Policy.

16  (*Id.* ¶ 29 (citing http://www.pandora.com/privacy).)[3]

17        In return for Pandora's promises to share PII only in a "de-identified or aggregated

18  form" and "only for purposes of using the Pandora App itself," Plaintiffs permitted "Pandora to

19  utilize exclusively de-identified PII and non-personally identifiable information."  (*Id.* ¶¶ 24,

20  30, 39, 91-92.)[4]  Plaintiffs allege that "Pandora did not explain - and consumers were unaware -

21  that the information was not used for purposes of the Pandora application itself, but rather for

22  the transmission and commercialization of the information by way of third-party advertisers."

23  (SAC ¶ 1, emphasis omitted).

24

25  _____

26        [3]     Pandora attached a copy of its Privacy Policy, in effect as of January 30,
     2012, to a request for judicial notice.  (Docket No. 84.)  Plaintiffs have not objected to the
27   request, do not dispute the authenticity of the Privacy Policy, and rely on the Privacy Policy
     in their complaint.  Accordingly, the Court GRANTS the request for judicial notice.

28        [4]     None of Plaintiffs' claims are premised on allegations that Pandora failed to
     live up to its promise that it would provide Plaintiffs with music streaming services.

1    Plaintiffs allege that PII is valuable private property, and they did not grant Pandora

2    consent to distribute their PII to third-parties.  (*Id.* ¶¶ 44-45, 48-50.)  Plaintiffs also allege that

3    Pandor installed "certain code components" on their mobile devices, which consumed portions

4    of the 'cache' and/or gigabytes of memory."  (*Id.* ¶ 51.)  Plaintiffs allege that they paid money

5    for the exclusive use of that memory, and they allege that mobile device manufacturers charge

6    their customers a premium to purchase extra memory on the devices.  (*Id.* ¶ 52.)  According to

7    Plaintiffs, because the Pandora App used more bandwidth and data than was necessary to

8    operate, absent the collection of their PII, they paid monthly fees for data plans on their mobile

9    devices, incurred additional fees when they exceeded their monthly allotments, and had less

10   available data each month.  (*Id.* ¶¶ 43-59.)

11   Plaintiffs allege that they would not have downloaded the Pandora App and provided

12   Pandora with their PII, had they known how Pandora actually treated and used their PII.  In

13   addition, the Pandora One Plaintiffs allege that they would not have paid for Pandora One had

14   they known how Pandora actually treated and used their PII.  (*Id.* ¶¶ 7-10, 60-63.)

15   Based on these, and other allegations, Plaintiffs assert claims for violations of California

16   Business and Profession Code section 17200, *et seq.*, (the "UCL Claim"), breach of contract,

17   and violations of Article I, Section I of the California Constitution (the "Right to Privacy

18   Claim").

19                                              **ANALYSIS**

20   **A.    Applicable Legal Standards.**

21          **1.    Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)").**

22   Pandora moves to dismiss Plaintiffs' first and second claims for relief on the basis that

23   Plaintiffs lack standing under Article III of the United States Constitution.  The Court evaluates

24   the motion to dismiss for lack of Article III standing pursuant to Rule 12(b)(1).  *See White v.*

25   *Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A motion to dismiss for lack of subject matter

26   jurisdiction under Rule 12(b)(1) may be "facial or factual."  *Safe Air for Everyone v. Meyer*, 373

27   F.3d 1035, 1039 (9th Cir. 2004).  Pandora raises a facial challenge to Plaintiffs' standing.

28   Therefore, the Court "must accept as true all material allegations in the complaint, and must

United States District Court

For the Northern District of California

3

construe the complaint in" Plaintiffs' favor. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal cite and quotations omitted).

"The jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008). Thus, the fact that Plaintiffs may allege facts that, at the pleading stage, satisfy the requirements for Article III standing does not mean these same facts would be sufficient to state a claim. *See Doe v. Chao*, 540 U.S. 614, 624-25 (2004); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 712 n.5 (N.D. Cal. 2011) (quoting *Doe*, 540 U.S. at 624-25).

**2.    Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").**

Pandora also moves to dismiss each of Plaintiffs' claims pursuant to Rule 12(b)(6). A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A motion to dismiss for "lack of statutory standing requires dismissal for failure to state a claim[.]" *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). The Court construes the allegations in the complaint in the light most favorable to the non-moving party, and it takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Instead, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line

4

United States District Court

For the Northern District of California

1  between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S.662,

2  678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

3      If a plaintiff's allegations are insufficient to state a claim, a court should grant leave to

4  amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291,

5  296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242,

6  246-47 (9th Cir. 1990).

7  **B.**     **The Court Denies the Motion to Dismiss for Lack of Article III Standing.**

8      In order to satisfy Article III's standing requirements, Plaintiffs must show: (1) they

9  suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent,

10  not conjectural or hypothetical; (2) that the injury is fairly traceable to Pandora's conduct; and

11  (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a

12  favorable decision. *Lujan*, 504 U.S. at 560-61.  Plaintiffs argue, *inter alia*, that they have

13  standing because Pandora's conduct decreased the amount of memory space on their mobile

14  devices.

15      Courts have found that "[d]imunition in the performance of an electronic device may

16  constitute an injury in fact, but a plaintiff must 'allege facts showing that this is true.'"

17  *Goodman v. HTC America, Inc.*, 2012 WL 2412070, at *6 (W.D. Wash. June 26, 2012) (quoting

18  *LaCourt v. Specific Media*, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (emphasis

19  added); *see also In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1054-56 (N.D. Cal. 2012)

20  ("*iPhone App. Litig. II*").  For example, in *iPhone App. Litig. II*, the plaintiffs alleged that they

21  paid for the "exclusive use" of the memory on their phones.  The court concluded that

22  allegations regarding diminished storage, battery life, and bandwidth were sufficient to allege

23  actual injury.  *Id.* at 1054.

24      Although the Court previously concluded that Mr. Yunker had not alleged sufficient

25  facts to premise Article III standing on this theory, Plaintiffs' allegations in the SACC are

26

27

28

5

United States District Court

For the Northern District of California

1  similar to the allegations in *iPhone App. Litig. II*.[5]  Plaintiffs allege that the Pandora App

2  "consumed more bandwidth than was necessary absent the collection of Plaintiff's [*sic*] PII,"

3  and that "more data was consumed by the [Pandora] App than was necessary[.]" (SACC ¶ 55,

4  57.)  According to Plaintiffs, as a result, they had less available data each month, *and* they

5  allege they incurred additional fees when their monthly allotments were exceeded.  (*Id.* ¶¶ 55-

6  58.)  Plaintiffs also allege that "the presence and surreptitious activities of the third-party

7  advertising libraries in the Pandora App include certain code components that ... consumed

8  portions of the 'cache' and/or gigabytes of memory" available to them.  (*Id.* ¶ 51.)  Plaintiffs

9  further allege that Pandora consumed the memory available to Plaintiffs for its "own purposes,"

10  and that this "constitutes a taking of an asset of economic value, paid for by Plaintiffs."  (*Id.* ¶

11  54.)  In addition, the Pandora One Plaintiffs allege they paid monthly fees for the premium

12  service and allege they would not have purchased that service had they known how Pandora

13  was using their PII.  Plaintiffs may face an uphill battle proving that they have standing Article

14  III standing[6],  but they set forth sufficient facts to *allege* Article III standing.

15        Accordingly, the Court denies, in part, Pandora's motion to dismiss.

16  **C.      The Court Denies Pandora's Motion to Dismiss the UCL Claim.**

17        **1.      Plaintiffs Have Statutory Standing to Pursue the UCL Claim.**

18        In their first claim for relief, Plaintiffs allege Pandora violated the UCL.  Pandora argues

19  that Plaintiffs lack statutory standing to pursue this claim.  The UCL "requires that a plaintiff

20  have 'lost money or property' to have standing to sue.  The plain import of this is that a plaintiff

21  now must demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 51

22  Cal. 4th 310, 323 (2011); *see also* Cal. Bus. & Prof. Code § 17204.  "California courts have

---

[5]      *See, e.g., In re iPhone App. Litig.*, 11-md-2250-LHK, First Amended Consolidated Complaint ("*iPhone App. Lit.* FACC"), ¶¶ 63.b, 72.d, 198.)  Pandora requests that the Court take judicial notice of the First Amended Complaint filed in *In re iPhone App Litig.*, and it has attached the complaint as Exhibit A to the Declaration of Tyler Newby. (Docket No. 89, Reply Request for Judicial Notice; Docket No. 90, Declaration of Tyler Newby.)  Plaintiffs have not objected to that request.  Because the Court can take judicial notice of the existence of court records, and because the Court is not reviewing the complaint for the truth of the facts alleged therein, the Court GRANTS the request for judicial notice.

[6]      *See, e.g., In re iPhone App. Litig.*, – F. Supp. 2d –, 2013 WL 6212591 (N.D. Cal. Nov. 25, 2013).

United States District Court

For the Northern District of California

1  distinguished the UCL standing requirement as more stringent than the federal Article III

2  standing requirement," because of the requirement that a UCL plaintiff have lost money or

3  property. *Pirozzi v. Apple, Inc.*, – F. Supp. 2d –, 2013 WL 4029067, at *5 (N.D. Cal. Aug. 5,

4  2013).  However, there are many ways a plaintiff may establish economic injury to show

5  standing under the UCL, including "surrender[ing] in a transaction more, or acquir[ing] in a

6  transaction less, than he or she otherwise would have."  *Kwikset*, 51 Cal. 4th at 323; *see also id.*

7  at 325 (allegations of "personal, individualized loss of money or property in any nontrivial

8  amount" is sufficient to allege injury in fact under UCL).

9        As set forth above, Plaintiffs allege that they paid for the exclusive use of the memory

10  and for data plans on their devices, *and* incurred additional fees when monthly allotments were

11  exceeded.  The Plaintiffs also allege that this economic injury was caused by the fact that the

12  Pandora App used more data than was necessary when it collected and shared their PII with

13  third-parties.  Plaintiffs have *alleged* sufficient facts to show they have standing to pursue the

14  UCL claim.

15        Accordingly, the Court denies, in part, Pandora's motion to dismiss.

16        **2.      Plaintiffs State a Claim Under the Unfair Prong of the UCL.**

17        Under the UCL, "there are three varieties of unfair competition: practices which are

18  unlawful, unfair or fraudulent."  *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th

19  824, 837 (2006); *see also Albillo v. Intermodal Container Services, Inc*., 114 Cal. App. 4th 190,

20  206 (2003) (to state a UCL claim, a "plaintiff must establish that the practice is either unlawful

21  (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e.,

22  is likely to deceive members of the public)").  Plaintiffs' UCL claim appears to be premised

23  solely on the "unfair" prong.  (*See* SACC ¶ 80.)

24        Pandora argues that Plaintiffs fail to state a claim under the unfair prong.  The Court

25  addressed this issue in its Order resolving Pandora's motion to dismiss the First Amended

26  Complaint and concluded that, if Mr. Yunker could allege facts to show he had standing, he had

27  alleged sufficient facts to state a claim under the unfair prong.  *Yunker*, 2013 WL 1282980, at

28

*12.  Because Plaintiffs allege sufficient facts to show they have statutory standing, they have now stated a claim under the unfair prong.

Accordingly, the Court denies, in part, Pandora's motion to dismiss

**D.     The Court Denies the Motion to Dismiss the Breach of Contract Claim**[7]

In their second claim for relief, Plaintiffs allege that Pandora breached the terms of its Privacy Policy.  In order to state a claim for breach of contract, Plaintiffs must allege: (1) the existence of a contract; (2) they performed under the contract; (3) Pandora breached the contract; (4) and they suffered appreciable and actual damage as a result of Pandora's breach. *See, e.g., Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (citing *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App. 2d 506, 511 (1967)).

Pandora argues that the Privacy Policy is not a contract.  Plaintiffs allege that they transmitted PII, which has value to Pandora, in exchange for use of the Pandora App and a promise that Pandora would use that information in accordance with the terms of its Privacy Policy.  Based on these allegations, and at this stage of the proceedings, the Court concludes that Plaintiffs sufficiently allege a contract existed.  In addition, and contrary to Pandora's argument, Plaintiffs incorporate the "device resource utilization allegations," in the breach of contract claim.  (*See* SACC ¶ 87 (incorporating by reference paragraphs 1-75).)  Thus, Plaintiffs allege that because Pandora used and transmitted PII in a manner that did not comport with the terms of the Privacy Policy, they incurred overage charges on their data and memory plans, *i.e.* they suffered damage as a result of the alleged breach.  Once again, although Plaintiffs may face an uphill battle proving this claim, they have stated a claim.

Accordingly, the Court denied, in part, Pandora's motion to dismiss.

**E.     The Court Dismisses the Right to Privacy Claim With Prejudice.**

In their third claim for relief, Plaintiffs allege that Pandora violated their right to privacy under the California Constitution.  In order to state a Right to Privacy claim, Plaintiffs must allege facts showing: (1) a specific, legally protected privacy interest; (2) a reasonable

---

[7]     The parties have assumed that California law applies to the claims for breach of contract.  The Court, therefore, has applied California law to resolve the motion.

United States District Court

For the Northern District of California

1    expectation of privacy; and (3) conduct that is "sufficiently serious in [its] nature, scope, and

2    actual or potential impact to constitute an egregious breach of the social norms underlying the

3    privacy right." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994); *see also*

4    *iPhone App Litig. II*, 844 F. Supp. 2d at 1063.  This case raises the issue of "informational

5    privacy," *i.e.* the alleged "dissemination or misuse of sensitive and confidential information...."

6    *Hill*, 7 Cal. 4th at 35.

7         The Court has considered the new allegations in the SACC.  For the reasons set forth in

8    its previous order, the Court concludes that the Plaintiffs still fail to allege facts that satisfy the

9    third element of this claim.  *See Yunker*, 2013 WL 1282980, at *14-*15.  Because this is the

10   third iteration of Plaintiffs' complaint, the Court concludes that any further amendments would

11   be futile.

12        Accordingly, the Court grants, in part, Pandora's motion to dismiss, and it dismisses the

13   Right to Privacy Claim, without leave to amend.

14                                  **CONCLUSION**

15        For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART,

16   Pandora's motion to dismiss.  The parties are HEREBY ORDERED to appear for a case

17   management conference on April 18, 2014 at 11:00 a.m. in Courtroom 5, Second Floor, 1301

18   Clay Street, Oakland, California.  The parties shall submit a joint case management statement

19   by no later than April 11, 2014.

20        **IT IS SO ORDERED.**

21   Dated: March 10, 2014

22                                  JEFFREY S. WHITE
                                    UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28